# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 AUG 25 AM 11: 03

CLERK _L. Ilenden_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

JOHN E. HODGES, JR., )
)
    Petitioner, )
)
v. )  CV 310-077
)  (Formerly CR 305-024)
UNITED STATES OF AMERICA, )
)
    Respondent. )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate confined to federal custody at FCI Big Spring, in Big Spring, Texas, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Criminal Proceedings

Pursuant to an October 13, 2006 superceding indictment, Petitioner was charged with conspiracy to distribute 50 grams or more of cocaine base (crack), along with a quantity of cocaine hydrochloride (powder), in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1] United States v. Hodges, CR 305-024, doc. no. 58 (S.D. Ga. Oct. 13, 2006) (hereinafter "CR 305-024"). At a change of plea (Rule 11) hearing held November 28, 2007, Petitioner pled guilty

---

[1] In the underlying criminal proceeding, Petitioner was indicted under the name "Johnny Hodges." CR 305-024, doc. no. 1. His full name is John Edward Hodges, Jr. See Presentence Investigation Report, Identifying Data, p. 3.

pursuant to a plea agreement with the government to the lesser included offense of conspiracy to distribute *a quantity* of crack cocaine and powder cocaine. Id., doc. nos. 139, 159, 201. Under the terms of the plea agreement, the government agreed, *inter alia*, to: (1) not seek a sentencing enhancement pursuant to 21 U.S.C. § 851;[2] (2) recommend that the district court find Petitioner to be a "minor participant" in the conspiracy, giving Petitioner a two-level reduction under the United States Sentence Guidelines (the "Guidelines"); and (3) recommend a three-level reduction for acceptance of responsibility, "provided the defendant truthfully admits the conduct comprising the offense of conviction . . . and truthfully admits or does not falsely deny any additional relevant conduct for which the defendant is accountable." Id., doc. no. 159, p. 2. In return, Petitioner agreed, *inter alia*, to plead guilty to the lesser included offense of Count 1 of the superceding indictment and "[a]cknowledge at the time of the plea the truth of the 'Factual Basis'[3] contained in the plea agreement." Id.

After the Rule 11 hearing, the United States Probation Office prepared a presentence investigation report ("PSI").[4] The PSI indicated that Petitioner's prior convictions included, *inter alia*, a 2001 conviction in the Montgomery County Superior Court for a sale of cocaine,

---

[2] A sentence enhancement pursuant to 21 U.S.C. § 851 would have resulted in Petitioner receiving "an almost mandatory life sentence." Id., doc. no. 168, p. 15; see PSI ¶ 68.

[3] The "Factual Basis" that Petitioner agreed to admit to under the plea agreement provided that he and his co-conspirators "did knowingly and intentionally combine, conspire, confederate, and agree to commit offenses against the United States, to wit: to distribute 50 grams or more of cocaine base (crack), and a quantity of cocaine hydrochloride (powder)" and that Petitioner's "plea of guilty constitutes proof of the lesser included offense of that count, that is to say, without any drug quantity threshold being alleged for penalty enhancing purposes." Id., doc. no. 159, pp. 6-7.

[4] The probation officer interviewed Petitioner following his Rule 11 hearing, where he explained that his involvement in the conspiracy included working security at "the club," moving traffic flow, and selling marijuana, crack cocaine, and powder cocaine. PSI ¶ 29.

2

and a 2003 conviction in that court for possession of marijuana with intent to distribute. PSI ¶¶ 45-46. Petitioner's total offense level and criminal history category yielded a total offense level of 32 with a criminal history category of VI, with an advisory range of 210 to 262 months under the Guidelines; the PSI provided, however, that the statutory maximum term of imprisonment pursuant to 21 U.S.C. § 841(b)(1)(C) was twenty years (240 months). Id. ¶¶ 66-67. Because the high end of the Guidelines range was higher than the statutorily permitted sentence, the probation officer concluded that the applicable Guidelines range was 210 months up to the statutory maximum of 240 months. Id. ¶ 67.

Petitioner raised a number of objections to the PSI – namely, the government's description of the events of the conspiracy, the quantity of drugs attributable to him under the conspiracy, and to his status as a career offender.[5] Id., addendum. Since Petitioner "objected to every drug quantity attributable to him" in the PSI, the probation officer considered that Petitioner had not demonstrated acceptance of responsibility pursuant to § 3E1.1 of the Guidelines,[6] and recommended that he not receive the corresponding three-level reduction in his offense level. Id. ¶¶ 29-30. After the PSI was released, Petitioner also wrote a letter in April, 2008 to the Honorable William T. Moore, Jr., then-Chief United States District Judge, where he downplayed his previous criminal convictions and argued that they did not make him a career offender. CR 305-024, doc. no. 146, pp. 1-2. Petitioner similarly argued that his role

---

[5] Under § 4B1.1 of the Guidelines, status as a career offender would result in a four-level enhancement. PSI ¶ 40.

[6] Under § 3E1.1(a) of the Guidelines, a defendant who "clearly demonstrates acceptance of responsibility for his offense" is eligible for a 2-level reduction; an additional 1-level reduction is available on motion of the government under § 3E1.1(b) where the base offense level is 16 or greater, and the government states that the defendant has timely notified authorities of his intention to enter a guilty plea, thus conserving government resources.

3

in the current conspiracy charge was a "minor" one, and that he was responsible for his own actions but not accountable for his co-conspirators' drugs. Id. at 3-5.

On October 27, 2008, Judge Moore conducted a sentencing hearing. Id., doc. no. 168. There, counsel for Petitioner, Mr. Jeffrey M. Harvey, argued against Petitioner's status in the PSI as a career offender, and argued that the quantity of drugs attributed to Petitioner was not reasonably foreseeable under the scope of the conspiracy. Id. at 4-10. Petitioner also testified on his own behalf, stating that he accepted his role in the conspiracy "as being a minimal role[;] as being somebody that worked at the nightclub," and that he accepted responsibility for "being in the nightclub[,] working there[,] and being around people that sell drugs." Id. at 12, 14.

After considering the evidence, Judge Moore found that sentencing Petitioner as a career offender based on his prior convictions would significantly over-represent Petitioner's criminal background. Id. at 16. Without the career offender status, Petitioner's total offense level was reduced to 28 with a criminal history category of IV, which changed the Guidelines range to 110-137 months.[7] Id. at 17-18. Judge Moore sentenced Petitioner to 137 months of imprisonment on the conspiracy count, to be served consecutively to his state term of imprisonment. Id., doc. nos. 160, 168. A judgment was entered, following which Petitioner filed a direct appeal. Id., doc. nos. 160, 162. On June 15, 2009, the Eleventh Circuit Court of Appeals affirmed Petitioner's sentence. United States v. Hodges, 334 F. App'x 214, 216

---

[7]Because status as a career offender would have trumped any reduction in sentencing for Petitioner's role as a minor participant, Judge Moore's finding that Petitioner was not a career offender gave him the additional benefit of a two-level reduction for his role as a minor participant. (See id. at 11.)

(11th Cir. 2009) (*per curiam*).[8]

### B.     Issues Raised in § 2255 Motion

Petitioner then timely filed his § 2255 motion, in which he raises the following two grounds for relief: (1) that his counsel was ineffective for objecting to the drug quantities for which Petitioner was attributed responsibility in the PSI, resulting in a loss of a three-level reduction for acceptance of responsibility; and (2) that his counsel was ineffective for failing to ask that Petitioner's federal sentence run concurrent with a state term of imprisonment from a parole violation. (Doc. no. 1, pp. 5, 10-12.) Respondent filed a timely response to Petitioner's § 2255 motion, following which Petitioner filed a reply. (Doc. nos. 4, 7.) The Court resolves these matters as follows.

## II.     DISCUSSION

### A.     Evidentiary Hearing Not Required

The Court recognizes that in the Eleventh Circuit, the general rule is "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

---

[8]In his direct appeal, Petitioner argued that the District Court erred (1) by sentencing him based on contested facts in the PSI, and (2) by denying him a reduction under the Guidelines for acceptance of responsibility. Hodges, 334 F. App'x at 214.

<u>Stephens v. United States</u>, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claims are affirmatively contradicted by the record or otherwise fail as a matter of law, and therefore no evidentiary hearing is necessary in this case.

**B.      Standard Governing Ineffective Assistance of Counsel Claims**

As noted above, Petitioner has raised two grounds for relief in his § 2255 motion, both of which are premised on the allegedly ineffective assistance of his counsel, Mr. Harvey. The ineffective assistance of counsel claims in the instant motion are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" <u>Id.</u>; <u>see also</u> <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

In applying the <u>Strickland</u> components outlined above, "[a] court need not determine

6

whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511. With these governing standards in mind, the Court will address each of Petitioner's specific claims.

### 1. No Ineffectiveness of Counsel for Objecting to Drug Quantities

In Ground One of his § 2255 motion, Petitioner argues that his trial counsel rendered ineffective assistance by objecting to the quantity of drugs that were attributable to Petitioner in the conspiracy, causing the District Court to deny him a three-level reduction under the Guidelines for acceptance of responsibility. (Doc. no. 1, pp. 5, 11.) Respondent counters that Petitioner – not his counsel – was the driving force for the objections to the drug quantities attributed to the conspiracy. (Doc. no. 4, p. 15.) Moreover, Respondent argues that Petitioner himself objected to the drug quantities, and thus even if Mr. Harvey had not objected, the outcome would have been the same. (Id. at 17-18.) Respondent has the better argument.

Applying the Strickland framework to this claim, Petitioner must show: (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 688, 694. The Eleventh Circuit has made clear that if a petitioner fails to prove that he was prejudiced under the second prong of Strickland, this alone warrants denial of relief for a claim of ineffective assistance of counsel. Wainwright, 777 F.2d at 616.

Petitioner has failed to convince the Court that he suffered prejudice from Mr. Harvey's assistance. Petitioner argues that Mr. Harvey's inexperience in criminal law and his "undue influence" over him caused Petitioner to believe he could not be held accountable for his co-conspirators' drug activities. (Doc. no. 7, p. 6.) Petitioner asserts that "Mr. Harvey never explained to [him] that he could be held accountable for co-conspirators['] drugs in the conspiracy," and that he did not learn that he could be held accountable for his co-conspirators' drugs until Mr. Harvey brought the first version of the PSI to Petitioner in January of 2008.

(Id. at 8.) Petitioner goes on to explain that, had he known that he would be held responsible for his co-conspirators' drugs, he would have told Mr. Harvey not to object to the attributable drug quantities in the PSI, since "the only reason" he agreed to the plea agreement was to reap the benefit of the three-level reduction for acceptance of responsibility. (Id. at 8-9.)

Although Petitioner argues that he did not learn that he could be held accountable for his co-conspirators' drugs until the PSI was prepared in January of 2008, this date necessarily precedes the date Petitioner filed *objections to the PSI*. By his own admission, Petitioner was thus clearly aware of the law before he subsequently objected that his role in the conspiracy did not include the quantity of drugs that were attributed to him, and his self-serving attempt to now place the blame on his counsel is unavailing.

Furthermore, the Court notes that while Petitioner insists that he only agreed to plead guilty because he would receive a three-level reduction for acceptance of responsibility, the plea agreement allowed Petitioner to avoid the possibility of a mandatory life sentence pursuant to a sentencing enhancement under 21 U.S.C. § 851. CR 305-024, doc. no. 159, p. 2. Moreover, it was Mr. Harvey's assistance that persuaded Judge Moore to find that Petitioner was not a "career offender," thus avoiding a four-level enhancement under the Guidelines. Id., doc. no. 168, p. 16. Additionally, because status as a career offender would have trumped any reduction for Petitioner's role as a minor participant, Judge Moore's finding that Petitioner was not a career offender gave him the benefit of that additional two-level reduction. See id. at 11. As a result, Petitioner's recommended sentencing range was nearly halved from 210-240 months to 110-137 months. Id. at 18. Indeed, Judge Moore stated that Petitioner had received the "significant benefit of the Court's findings in this case." Id. at 21. Given this outcome, Petitioner is hard pressed to show that he suffered prejudice as a result of Mr. Harvey's

9

assistance.

Petitioner also fails to show prejudice because even if Mr. Harvey had not objected to the attributable drug quantities in the PSI, Petitioner has not established that the outcome of the proceedings would have been different where Petitioner himself made numerous attempts to minimize his role in the conspiracy.

At the November 28, 2007 Rule 11 hearing, Special Agent Stephen Tinsley with the Drug Enforcement Agency gave the factual basis for the conspiracy charge, stating that the government's evidence would indicate that Petitioner was part of a conspiracy, albeit in a minor role, to distribute and sell cocaine base and powder. CR 305-024, doc. no. 201, pp. 20-21. Upon conclusion of Agent Tinsley's testimony, Judge Moore asked Petitioner to explain his role in the conspiracy. Id. at 22. Judge Moore specifically clarified with Petitioner that his minor role in the conspiracy still included responsibility for distributing and selling cocaine:

> [PETITIONER:] Around 2005 I was working in a nightclub, security. My job was to keep the cars moving in and out for the traffic. Police told us that [as] long as cars keep going back and forth, they'll keep the club open. But when they come by, the cars in the middle of the road, that they was going to close the club down. So I was the security over there. That was my job. And that's what I did. And every now and then I might've sold some marijuana, and I hung out and got high at the club. And that's what I did.
> [COURT:] Well, you're not charged in this conspiracy with selling marijuana; you're charged in this conspiracy with being involved in *a conspiracy for the distribution and sale of powder cocaine and crack cocaine. Did you do that?*
> [PETITIONER:] Yes.
> [COURT:] And did you do that with Mr. Adams and the other individuals?
> [PETITIONER:] Yes.

Id. (emphasis added). Following the Rule 11 hearing, Petitioner was interviewed by a U.S. probation officer in Dublin, Georgia. PSI ¶ 29. Petitioner stated to the probation officer that his involvement in the conspiracy included working security at "the club," moving traffic flow, and selling marijuana, crack cocaine, and powder cocaine. Id.

Yet, by the time of Petitioner's April, 2008 letter to Judge Moore, it was clear that he had changed his tune. In the letter, Petitioner argued that the drugs in the conspiracy belonged to his co-conspirators, and that "[a]ll I'm accountable for is my actions not others. Them folks lived in another county. I knew nothing about their business." CR 305-024, doc. no. 146, pp. 3-4. Mr. Harvey cannot be held responsible for this letter, as Petitioner opened it by stating: "My lawyer, knows nothing about me writing you." Id. at 1.

Petitioner again attempted to minimize his role in the conspiracy at the October 27, 2008 sentencing hearing. There, he stated:

> I accept my role in this conspiracy as being a minimal role as being somebody that worked at the nightclub. . . . I been locked up almost now three years behind somebody else's criminal activity because they don't want to own up to they drugs. . . . And I apologize for me being in the nightclub working there and being around people that sell drugs. I accept my responsibility for that[.]

Id., doc. no. 168, pp. 12-14. This testimony directly contradicts what Petitioner had previously admitted to Judge Moore during the November, 2007 Rule 11 hearing, and his statements in the interview with the probation officer. But, as noted above, even if Petitioner did not fully understand that he could be held accountable for the cocaine in the conspiracy until the PSI was released in January of 2008, he was certainly aware of the law before he denied responsibility for his co-conspirators' cocaine in his letter to Judge Moore and at the sentencing hearing. Petitioner's letter to Judge Moore and his statements at the sentencing hearing demonstrate that he had not accepted responsibility for any of the relevant conduct in the conspiracy – distributing and selling cocaine. Without regard to his counsel's actions, Petitioner *himself* had not "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable under § 1B1.3" of the Guidelines, U.S.S.G. § 3E1.1, cmt.

11

1.(a), and the District Court correctly denied Petitioner a reduction for acceptance of responsibility.

It is ultimately for the District Court to decide whether a defendant has accepted responsibility, and the District Court had discretion to make its determination independent of any recommendation by the probation officer. See United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999) (refusing to overturn district court's determination that defendant bank robber was not entitled to reduction for acceptance of responsibility, even where probation officer had recommended it). The District Court is also accorded special deference when ruling on offense-level reductions for a defendant's acceptance of responsibility "[b]ecause of the importance of determining a defendant's apparent sincerity through firsthand observation." United States v. Williams, 340 F.3d 1231, 1241 (11th Cir. 2003). Thus, even if Mr. Harvey had not objected to the drug quantities attributable to Petitioner in the PSI, the District Court had the authority to deny Petitioner a three-level reduction based on the Judge's own observations of Petitioner at the sentencing hearing.

In sum, Petitioner fails to satisfy the second prong of Strickland because he cannot show that he suffered prejudice from Mr. Harvey's assistance. Under Wainwright, Petitioner is therefore not entitled to relief on Ground One of his § 2255 motion.

### 2. No Ineffectiveness of Counsel for Failure to Ask that Sentence Run Concurrently Instead of Consecutively

In Ground Two of his § 2255 motion, Petitioner claims that his counsel was ineffective for failing to request that his 137-month federal sentence run concurrent, rather than consecutive, to his two-year state term of imprisonment. (Doc. no. 1, p. 5.) In support of this argument, Petitioner states that Mr. Harvey failed to properly investigate and evaluate the

merits of requesting pre-sentence credit for his state sentence; had Mr. Harvey raised this issue, Petitioner argues that the District Court could have credited Petitioner for any of the 25 months he had been in federal custody.[9] (Doc. no. 7, pp. 13-14.) Since there is "no evidence the district court would not have granted any credit" for his state sentence, Petitioner argues that there is a reasonable probability of a different outcome. (Id. at 14.)

Petitioner's argument misses the mark. The burden lies on Petitioner – not on Respondent – to show that there is a reasonable probability that the outcome of his proceeding would have been different had his counsel specifically requested to run the federal sentence concurrent to the state sentence. Wainwright, 777 F.2d at 616; Strickland, 466 U.S. at 694-95. As Respondent points out, Petitioner can only speculate whether the outcome would have been different. (Doc. no. 4, p. 18.) Indeed, Petitioner points to § 5G1.3 of the Guidelines to show that the district court "may" impose the federal sentence "to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment." Yet this section confirms that it was squarely within the District Court's discretion to impose Petitioner's federal sentence to run consecutively. Petitioner cannot show that, but for his counsel's failure to request a concurrent sentence, the outcome of the proceeding would have - not merely *could have* - been different. Thus, Petitioner has not met his burden to show prejudice as to his second claim of ineffective assistance of counsel, and is therefore not entitled to relief on that ground.

---

[9]Petitioner was arrested by state probation authorities on May 7, 2006 for violations of his probation; his probation term was revoked and replaced with a sentence of two-years confinement, to run from May 2006 to May 2008. PSI ¶ 45. Petitioner appeared via a writ for an initial appearance in his federal case on September 19, 2006, and has been in continuous federal custody since September 18, 2006. Id. ¶ 3.

## III.    CONCLUSION

For the reasons set forth above, Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 25th day of August, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE